**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 11-21468-CIV-GRAHAM/GOODMAN**

MICHAEL JOSEPH,

       Plaintiff,

vs.

JANET NAPOLITANO., Secretary,
U.S. Department of Homeland Security,

       Defendant.

_____/

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

     Based on the parties' consent, this case has been referred to the Undersigned by U.S. District Judge Donald L. Graham for all pre-trial proceedings. (D.E. 17-1, 18). On January 20, 2012, the Defendant, Janet Napolitano, Secretary of the U.S. Department of Homeland Security, moved for summary judgment. (DE 37). On February 7, 2012, the Plaintiff responded to the motion. (DE 42). On February 17, 2012, the Defendant filed a reply brief in further support of the motion. (DE 52).

     The Undersigned has carefully reviewed the motion, the associated briefing and the pertinent portions of the record. For the reasons stated below, the Court **grants** the Defendant's motion for summary judgment.

I.     Local Rule 56.1

     Under Local Rule 56.1, a party moving for summary judgment must submit a statement of material facts in separately numbered paragraphs supported by

specific citations to the record.  The opponent to the motion must then submit his own statement, which "shall correspond with the order and with the paragraph numbering scheme used by the movant."  S.D. Fla. Local Rule 56.1(a).  "All material facts set forth in the movant's statement filed and supported as required above will be **deemed admitted unless controverted** by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record."  S.D. Fla. Local Rule 56.1(b) (emphasis added).

Plaintiff, who is pursuing myriad employment discrimination and retaliation claims, did not comply with the local rule and submit a "single, concise statement of material facts as to which it is contended that there exists a genuine issue to be tried."  He also did not submit an opposing statement of material facts that "correspond[s] with the order and paragraph numbering scheme used by the movant."

Rule 56.1's orderly procedure "ensure[s] that statements of material facts filed by movants and opponents shall correspond with each other in numerical order so as to make review or summary judgment motions less burdensome to the Court."  2008 Comments to Local Rule 56.1.  But instead of submitting a statement of facts to rebut the facts which Defendant represented to be undisputed in her summary judgment motion on a paragraph-by-paragraph basis, Plaintiff instead proffered his own independent version of facts that were not organized in separately numbered paragraphs at all.

As the official comments to Local Rule 56.1 explain, the rule's clear procedural directive is intended to reduce confusion and prevent the Court from

having to scour the record and perform time-intensive fact searching.  The rule thus reflects a clear policy that it is **not** the court's obligation to scour the record for a factual dispute that precludes summary judgment.  Rather, it is the non-movant's obligation to specifically bring the factual dispute to the court's attention by rebutting the movant's factual statements on a paragraph by paragraph basis and with specific citations to the record.

Because Plaintiff did not contradict Defendant's statement of undisputed material facts and because Defendant's statements are supported by evidence in the record, the facts alleged in the defendant's statement are **deemed admitted.** *See Centennial Bank v. Noah Group, LLC*, 755 F. Supp. 2d 1256, 1258 n.2 (S.D. Fla. 2010); *Gossard v. JP Morgan Chase & Co.*, 612 F. Supp. 2d 1242, 1245-46 (S.D. Fla. 2009) (deeming facts in the defendant's summary judgment motion admitted even though the plaintiff's procedurally deficient response -- i.e., submitting her own version of the relevant facts -- provides her idea of the treatment she received while employed by defendant, and noting Plaintiff's failure to "frame the factual issues that are in dispute and allow the Court to resolve this matter more easily").[1]

---

[1]    This Circuit has upheld previous versions of the Local Rule. *See Digioia v. H. Koch & Sons, Div. of Wickes Mfg. Co.*, 944 F.2d 809, 811 (11th Cir. 1991); *Calmaquip Engineering West Hemisphere Corp. v. West Coast Carriers, Ltd.*, 650 F.2d 633, 636 (5th Cir. 1981) ("A litigant has a right to rely upon the local rules, as the parties and the court are bound by them." (quoting *Woods Construction Co. v. Atlas Chemical Industries, Inc.*, 337 F.2d 888, 891 (10th Cir. 1964))).

Sister courts in the Southern District of Florida have deemed a statement of undisputed material facts admitted when the opposing parties failed rebut the facts in the procedural format required by Rule 56.1.  For example, in *Morales v.*

The Court *in its discretion* considered the arguments made by the plaintiff and the record citations included in his opposition to the motion for summary judgment. Therefore, as explained below, summary judgment is appropriate based on an independent review of the underlying record.

But given that the undisputed facts proffered by the defendant and supported by the record contain legitimate non-discriminatory and non-retaliatory explanations for the defendant's actions, the defendant is also entitled to summary judgment by virtue of Rule 56.1. Thus, the application of Rule 56.1 constitutes an alternate basis to support this ruling granting the defendant's summary judgment motion.[2]

---

*Merco Group, Inc.*, 09-22554, 2011 U.S. Dist. LEXIS 6256, at *8 (S.D. Fla. Jan. 24, 2011), the defendants in an employment discrimination and retaliation case filed a summary judgment motion but did not file the statement of undisputed facts required by the local rule. In response to the defendants' summary judgment motion, the plaintiff filed a statement of undisputed facts, which were supported by the record, and the court deemed the *plaintiff's* statement of facts admitted when the defendant did not properly respond to them.

Similarly, district courts deemed admitted the facts outlined in the statements of undisputed material facts when the non-moving parties failed to follow the local rule's requirement to submit their own corresponding statements of fact in *United States v. Jallali*, No. 08–22774, 2011 WL 65888 (S.D. Fla. Jan. 10, 2011) and *Zayas v. Bellsouth Telecommunications, Inc.*, No. 11–21193, 2012 WL 161330 (S.D. Fla. Jan. 18, 2012).

[2]    Consequently, while the Court spent considerable time reviewing the record here, this time-intensive process was not required because Plaintiff's failure to follow Local Rule 56.1 was, in itself, sufficient to create a "deemed admitted" record for purposes of evaluating this motion.

In future summary judgment motions assigned to the Undersigned, the Court retains the prerogative to impose the consequences of Rule 56.1 -- and deem admitted a statement of adequately supported facts that are not properly contested, without conducting any independent review of the record -- against parties who flout the local rules' requirements. The Court will not hesitate to

II.     Background

From November 2002 through August 2010, the United States Citizenship and Immigration Service (USCIS) employed Plaintiff Michael Joseph as a student-employee under the Student Career Experience Program (SCEP), a program designed for students to work at federal agencies.  The program is only open to students *actively pursuing a university degree* and students must execute an agreement signed by their respective university in order to participate in the program.  Students must also keep the agency appraised of their academic progress on a regular basis and, upon request, must provide verification of their academic status and course schedule.  After a student completes his educational requirements, the agency has discretion to noncompetitively appoint to the student to a career position within 120 days.

Joseph executed a SCEP agreement in 2002 based on his pursuit of an undergraduate degree at Florida International University (FIU).   Joseph completed his undergraduate work in 2004 and received a new appointment based on his participation in an MBA program, also at FIU.[3]  Through discovery, the Defendant has learned that Joseph actually completed his MBA course requirements in *2006*, that he was not enrolled at FIU in any capacity between May 2007 and August 2009 and, in an apparent attempt to prolong his eligibility

trigger these clear, rule-based consequences, especially in cases where parties' failure to follow Rule 56.1 demonstrates a reckless disregard for the procedural rules of this District and imposes a substantial burden on scarce judicial resources.

[3]     Joseph did not execute a new SCEP agreement with FIU until August 5, 2010, shortly before his termination became effective.

under the SCEP program, was enrolled for only one credit hour during the Fall 2009 and Summer 2010 semesters.  In fact, Joseph was removed from FIU's MBA program and readmitted for the Fall 2009 Term.  Joseph told FIU that he was required by the Department of Homeland Security to keep his MBA degree open until he completed law school.  Joseph ultimately completed 64 credits even though he needed only 46 to complete his degree.

Joseph did not apply for graduation from the MBA program until September 2009, shortly after being readmitted to the program.  Instead, Joseph began studying law at St. Thomas University.  Under the terms of the SCEP program, Joseph was required to update the agency and execute a new agreement upon changes in his enrollment status.  However, a new SCEP agreement was never executed with St. Thomas University.  Joseph's absence from FIU during the period from May 2007 through August 2009 rendered him ineligible for continued participation in the SCEP program (because he was not a student at FIU and never executed a new SCEP agreement with St. Thomas).  Joseph was also ineligible for the program for another reason: he never executed a new SCEP agreement upon starting his MBA program.

Nevertheless, despite these issues, which developed in the final years of Joseph's SCEP work, his first seven years with USCIS passed without incident.  Then, in the summer of 2009, Joseph was temporarily detailed to the Office of Chief Counsel (OCC) so that he could get exposure to a legal setting.  Joseph requested that he be permanently transferred to the OCC when his detail ended,

but the USCIS required that he return to the Miami Field Office and complete his SCEP work there.

After Joseph indicated that he would be in school between 10:00 a.m. and 3:00 p.m., the agency advised him that he could work between 7:00 a.m. and 9:00 a.m.   Joseph then claimed that those times conflicted with his class schedule but did not provide his superiors with a copy of his course list from the registrar as requested.   Indeed, Joseph has not provided *any* evidence that he had a class conflict during those morning hours and during his deposition he gave four inconsistent answers as to why he could not work between 7:00 a.m. and 9:00 a.m.   Joseph eventually provided the agency with an unofficial course schedule -- not an official schedule from the registrar -- which showed that he had no classes on any day of the week before 12:15 p.m. and no classes at all on Tuesdays or Fridays.   In other words, the schedule established that the scheduling conflict that Joseph described did not exist.   When Joseph failed to show up at the time requested by the agency, he was temporarily placed on "absent without leave" (AWOL) status.

On September 28, 2009 Joseph filed a complaint with the agency, alleging that four women discriminated against him on the basis of sex, race and national origin by declining to approve his transfer and placing him on AWOL status.   It appears, however, that Joseph continued working in the OCC in a clerical position until his ultimate termination in August 2010.

Meanwhile, Kriston Hardley, a USCIS Human Resource Specialist in Washington, D.C. *who has never met Joseph*, began auditing SCEP participants

in the Spring of 2009.   In April 2010, Hardley sent an email to *all* students participating in the SCEP, advising them of their annual verification requirements. When Joseph failed to respond to Hardley's request for information, and refused to comply with requests to submit documentation verifying his enrollment at FIU, Hardley reviewed Joseph's file and found numerous discrepancies that rendered him ineligible for the SCEP program.   For example, Joseph's resume showed that he completed his MBA program in 2006 but that he never executed a new SCEP agreement with St. Thomas.   Based on her research, Hardley learned that Joseph was going to receive both his law degree and his MBA in the summer of 2010, at which point he would no longer be eligible for the SCEP program.

Hardley wrote an email to Miami Field Office Director Alana Ow on July 8, 2010, informing her that Joseph was no longer eligible to participate in the SCEP program and must be terminated.   As a result, Ow wrote a memo to Gloria Scott, chief of the human resources division, informing her that Joseph was not eligible to continue participating in the SCEP program.   One day later, on July 9, 2010, Joseph was served with a notice from Anouchka Castro, the Acting Field Office Director of the USCIS Miami Field Office, stating that he would not be converted to a permanent (non-student) employee and that his last day of work would be July 23, 2010:

Dear Mr. Joseph:

This letter serves to notify you that, according to our records, you have completed the educational requirements of your appointment as a GS-0399-07 in the Student Career Experience Program (SCEP). Both you and Ms. Elaine Alaberty, Office of the Associate Dean of Academic Affairs, St. Thomas University School of Law, have confirmed that you met the educational requirements for your JD in May 2010. We have also received notice from USCIS Human Capital and Training, Human Resources Division, that you no longer meet the eligibility requirements for continued participation and employment under the USCIS Student Career Experience Program.

As of this date and in the foreseeable future, no vacancy is available within District 9 for your conversion to the competitive service. Thus, you will not be converted to a term, career, or career-conditional appointment as per 5 CFR 213.3202 and DHS Student Employment and Intern Program Policy.

Your last day will be at the end of your tour of duty on July 23, 2010.

Joseph's end date was subsequently extended to August 17, 2010 to reflect the date on which Joseph would complete his MBA program.

Joseph filed a second discrimination complaint with the agency after he was notified that he would not be converted to a permanent employee. Upon learning that his duties would be assumed by someone not of his race or national origin, he filed a third discrimination complaint. Joseph also brought a separate whistle blower complaint against the agency. Joseph was unsuccessful in obtaining any administrative remedies as a result of his various complaints.

Joseph brought this action in April 2011 pursuant to Title VII of the Civil Rights of Act of 1964. Joseph is a black, Haitian male. On September 16, 2011, I granted Joseph's motion to file an amended complaint.

The nine-count amended complaint raises various claims for discrimination and retaliation in violation of Title VII. Counts I, II, and III arise out of Defendant's alleged denial of Plaintiff's transfer request (to the OCC) and placement of Plaintiff in AWOL status. Counts IV, V, and VI arise out of Defendant's alleged failure or refusal to follow the terms of the Student Career

9

Experience Program.  Count VII alleges that Defendant retaliated against Plaintiff by terminating his employment because he filed an EEO complaint based on the Defendant's refusal to grant his transfer request and placing him in AWOL status. Counts VIII and IX allege that Joseph was replaced with a less-qualified employee because of his race and national origin.

III.    Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, affidavits and exhibits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.  *Allen*, 121 F.3d at 646.  On a motion for summary judgment, the court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether the evidence could reasonably sustain a jury verdict for the non-movant.  *Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.

While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment.  *Anderson*, 477 U.S. at 252.  "Rule 56 mandates the entry of summary judgment, upon motion, against a party who fails to make a showing

sufficient to establish an element essential to his case on which he bears the burden of proof at trial."  *Schechter v. Ga. State Univ.*, 341 Fed. Appx. 560, 562 (11th Cir. 2009).  A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough to defeat a properly supported motion for summary judgment.  *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

IV.    Standard for Discrimination Under Title VII

Title VII provides a civil remedy for employees who are victims of discrimination in the work place by making it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  An employee can satisfy his burden at the summary judgment stage with circumstantial evidence using the burden shifting scheme established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In order to prove discrimination, the plaintiff must show (1) that he was a member of a protected class, (2) that he was qualified for the job, (3) that he suffered an adverse employment action, and (4) that he was replaced by someone outside the relevant protected class.  *Hinson v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 828 (11th Cir. 2000).

When an employee establishes a *prima facie* case for intentional discrimination, the burden shifts to the employer to proffer a legitimate,

nondiscriminatory reason for the employer's action.  *See Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002).  The burden on the employer here is slight, and "the [employer] need only produce, not prove, a nondiscriminatory reason." *Walker v. Nations Bank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995).  If an employer puts forth a legitimate, nondiscriminatory reason, the burden returns to the employee to prove by a preponderance of the evidence that intentional discrimination motivated the employer or that the "legitimate" reason offered is merely a pretext for prohibited discrimination.  *See Rojas*, 285 F.3d at 1342; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

Courts have held that an employee can survive summary judgment by showing sufficient disputed facts which could demonstrate that the "legitimate" reason offered for the employment action was merely pretextual, had no basis in fact, or was insufficient to motivate the employment decision.  *See Humphrey v. Sears, Roebuck, and Co.*, 192 F. Supp. 2d 1371, 1375-76 (S.D. Fla. 2002).  "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Quarreling with that reason is not sufficient."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004) (citation omitted).  Although the same evidence used to establish a *prima facie* case can be used to cast doubt on an employer's proffered motive, "[t]he plaintiff cannot simply stand on her prima facie case; instead, she must convince the court that the evidence in the case as a whole preponderates in favor of a finding of intentional discrimination by the defendant." *Mortham*, 158 F.3d at 1184-85 & n.12.

12

V.      Standard for Retaliation Under Title VII

Title VII's anti-retaliation clause is broader than its anti-discrimination clause; an employee may pursue a claim for retaliation even if the employee's complaints of discriminations are ultimately meritless, so long as the employee has "a good faith, reasonable belief that the challenged practices violate Title VII." *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989); *see also Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002); *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997).  To establish a *prima facie* case of retaliation, an employee must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was some causal relationship or connection between the two events.  *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997).

Statutorily protected expression can be in the form of "opposition" or "participation."   Under Title VII's opposition clause, "an employer may not retaliate against an employee because the employee 'has opposed any practice made an unlawful employment practice by [Title VII].'"   *EEOC v. Total Sys. Servs.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (quoting 42 U.S.C. § 2000e-3(a)).  Under the participation clause, an employer "may not retaliate against an employee because the employee 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'"   *Id.*

Following the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), the type of conduct constituting an adverse employment action "has been broadened from that which adversely effects the [employee's] conditions of employment or employment status to that which has a materially adverse effect on the [employee], irrespective of whether it is employment or workplace-related." *Crawford v. Carroll*, 529 F.3d 961, 973 (11th Cir. 2008). Thus, an adverse retaliatory action under Title VII is one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry.*, 548 U.S. at 57.

Finally, "[t]o establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (quotations and alterations omitted).

Once the employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a non-retaliatory reason for its treatment of the employee. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If the employer presents a non-retaliatory explanation for its actions, the burden returns to the employee to show that the employer's explanation is a pretext for retaliation. *See id.* "A reason is not pretext for [retaliation] unless it is shown both that the reason was false, and that [retaliation] was the real reason." *Brooks v. County Comm'n of Jefferson County, Ala.*, 446

F.3d 1160, 1163 (11th Cir. 2006) (quotations omitted).  The employee can meet his burden "either directly by persuading the court that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Id.*  (quotations omitted).  However, "[p]rovided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."  *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

VI.     Failure to Transfer (Counts I-III)

Defendant argues that the plaintiff cannot establish a *prima facie* case on his discriminatory transfer claims because the denial of a lateral transfer from the Miami Field Office to the OCC does not constitute an *adverse employment action* under Title VII.  The defendant contends that Joseph performed only *clerical duties*, not legal duties, while at the OCC, and that the OCC position should therefore not be seen as a promotion over the position in the Miami Field Office.

The Eleventh Circuit has explained that "not all conduct by an employer negatively affecting an employee constitutes adverse employment action."  *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001).  Rather,

> to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment.  Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

*Id.* at 1239.  Thus, the failure to agree to a lateral transfer does not amount to an adverse employment action.  *See Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998) (summarizing authority for the rule that a "a truly lateral transfer cannot be adverse" and explaining that "not every unkind act amounts to an adverse employment action").

The plaintiff responds that denying his transfer could well dissuade a reasonable employee from making a charge of discrimination.  This argument confuses the standards for discrimination and retaliation.  It also is factually illogical based on the timeline in this case because Joseph began complaining about discrimination only *after* the agency refused to approve his transfer and placed him on AWOL status.

The plaintiff's response does not address the defendant's legal position that failing to make a lateral transfer is not actionable under Title VII.  Joseph does not cite to any record evidence that could prove, for example, that the position at the OCC would have entitled him to a higher salary or to greater responsibilities.  Because the plaintiff has not met his burden to present evidence that would permit a rational trier of fact to conclude that the plaintiff was subject to an adverse employment action within the meaning of Title VII when his transfer request was rejected, the defendant is entitled to summary judgment on the transfer issue.

VII.   Placement on "AWOL" Status (Counts I-III)

Next, the defendant argues that she is entitled to summary judgment on the issue of placing the plaintiff on AWOL status.  The defendant contends that

16

the plaintiff has failed to identify similarly situated individuals who were treated differently (the fourth element of the *prima facie* case for discrimination) and that the plaintiff cannot rebut the defendant's legitimate, non-discriminatory reason for taking this action: that the plaintiff was, in fact, AWOL.  *See generally Greer v. Paulson*, 505 F.3d 1306, 1318 (D.C. Cir. 2007) (affirming summary judgment for IRS Secretary, against former employee, and holding that plaintiff's failure to discuss her leave before taking it was a legitimate basis for placing her on AWOL status).

As noted above, the plaintiff did not follow Local Rule 56.1 and did not specifically controvert the defendant's statement of material facts, as required by the Local Rules.  Therefore, the Court deems admitted the fact that the plaintiff did not report for work as required.  In fact, *the plaintiff does not even argue that he reported for work*.  He appears to argue that even though he failed to report for work, he was nonetheless singled out for discipline because of his gender, race, and national origin.  The record does not support this assertion, either.  The record actually shows that the USCIS charged several other employees, who are not members of Joseph's protected classes, with being AWOL in 2009. Accordingly, Joseph fails to create a genuine factual dispute as to whether the USCIS's proffered reason for placing him on AWOL (that he failed to show up for his job) is pretextual; therefore, the defendant is entitled to summary judgment on this issue.

VIII.    Hostile Work Environment (Counts IV-VI)

Counts IV through VI of the amended complaint allege that Joseph was subjected to harsh treatment in the workplace, specifically the agency's failure to follow the SCEP agreement.  During Joseph's deposition, he stated that he was not given access to the entire building (and had to enter through the side entrance), not invited to special functions at the office, and was sometimes forced to do "manual labor," such as moving chairs and boxes and putting up artwork.  The defendant argues that she is entitled to summary judgment on this claim because these activities fall well short of the type of conduct needed to sustain a hostile work environment claim.

"A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Miller v. Kenworth of Dothan Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).  "[A] plaintiff wishing to establish a hostile work environment claim [must] show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such

environment under either a theory of vicarious or of direct liability." *Miller*, 277

F.3d at 1275.

To provide guidance on applying this standard, the Supreme Court

explained that the

> mere utterance of an . . . epithet which engenders offensive
> feelings in a employee, does not sufficiently affect the conditions of
> employment to implicate Title VII. Conduct that is not severe or
> pervasive enough to create an objectively hostile or abusive work
> environment -- an environment that a reasonable person would find
> hostile or abusive -- is beyond Title VII's purview. Likewise, if the
> victim does not subjectively perceive the environment to be
> abusive, the conduct has not actually altered the conditions of the
> victim's employment, and there is no Title VII violation.

> But Title VII comes into play before the harassing conduct leads to
> a nervous breakdown. A discriminatorily abusive work
> environment, even one that does not seriously affect employees'
> psychological well-being, can and often will detract from
> employees' job performance, discourage employees from
> remaining on the job, or keep them from advancing in their careers.
> Moreover, even without regard to these tangible effects, the very
> fact that the discriminatory conduct was so severe or pervasive that
> it created a work environment abusive to employees because of
> their race, gender, religion, or national origin offends Title VII's
> broad rule of workplace equality.

*Harris*, 510 U.S. at 21-22 (internal citations and quotations omitted); *see also*

*Guthrie v. Waffle House, Inc.*, No. 10–15090, 2012 WL 335629, at *4 (11th Cir.

Feb. 3, 2012) (affirming summary judgment for defendant employer and

explaining that the supervisors were "rude and boorish in their statements and

behavior" but that the actions fell "well short" of the conduct necessary to state a

hostile work environment claim); *Brooks v. Hyundai Motor Mfg. Ala., LLC,* 444 F.

App'x 385 (11th Cir. 2011) (affirming summary judgment for defendant in race-

based hostile work environment claim and noting that team leader's comments

about "black folk" and "nigger" were insufficient to generate a claim because the racial slurs were "very few in number" and because plaintiff testified that the prejudicial comments "did not adversely affect her job performance").

Joseph argues that the defendant intentionally promoted a pervasive atmosphere of discrimination against minorities, who were intimidated or unlawfully denied promotional opportunities. Joseph cites to deposition excerpts from Maria Aran and Esdras Charles. In response to questioning, Aran testified that she "perceives" an environment at the Miami USCIS office that is hostile to minorities but repeatedly failed to offer examples of discriminatory conduct and reiterated that she was just giving her "personal opinion." Similarly, Charles testified that he was assigned a position that required a 50-mile commute but failed to explain how this was the result of intentional discrimination, much less how it created a hostile work environment.

Thus, upon careful review and analysis, it is clear that neither of these depositions, which are for the most part based on vague generalizations, opinion and speculation, creates a genuine factual dispute as to whether a hostile work environment existed. Taken as completely true, the deposition testimony cited by Joseph establishes that some interns or employees may at times have been displeased with some work-related policies and decisions -- but the testimony does not describe the type of hostile work environment which would support a valid hostile work environment claim. The defendant is therefore entitled to summary judgment on this claim.

IX.     Retaliation (Count VII)

The defendant also moves for summary judgment on Joseph's retaliation claim.  Joseph claims that the defendant retaliated against him by refusing to follow the SCEP agreement and by refusing to convert his student position into a permanent position.  But in his summary judgment memorandum, Joseph does not explain how the defendant violated the SCEP agreement and limits his argument to claiming that as soon as he made his discrimination claims, the agency set in motion a process to terminate his employment.  In response, the defendant argues that Joseph cannot establish knowledge on the part of the decision-maker, temporal proximity or pretext.

According to the defendant, the USCIS Miami District was in an "overhire" status, meaning that all available positions were taken and that the office could not convert students to permanent employees *even if it wanted to*.  Setting aside for a moment the issues of knowledge and temporal proximity, which are elements of the plaintiff's *prima facie* case, the defendant's legitimate, non-discriminatory reason for failing to convert Joseph is established both by Joseph's failure to controvert the defendant's statements of material fact under Local Rule 56.1 and by the evidentiary record.

Every witness in this case with knowledge on the subject and whose testimony was submitted in connection with this motion stated during their deposition that the overhire status prevented the USCIS Miami District from converting *any* SCEP students into permanent employees during the relevant time period.  Even the witnesses whom Joseph relies upon testified that during

the time period in question, no students were converted to permanent employees because the Miami District was overstaffed.  It is also undisputed that the SCEP program provided employment opportunities exclusively for *students* and that Joseph was no longer a student at the time that his termination became effective.

Moreover, the sole email that Joseph relies on to prove his retaliation claim does not raise a reasonable inference of pretext or retaliation.  The email, from December 2009, is an inquiry from Linda Moye, an HR specialist, to Rosemary Melville, discussing whether there is a form letter to send to Joseph terminating his employment under the SCEP.  The letter was copied to Linda Swacina, the district director, who forwarded it to Anouchka Castro.  The letter did not mention any of Joseph's discrimination complaints or otherwise discuss protected activity under Title VII.  In fact, the express and limited purpose of the email was to find out the appropriate guidelines and forms for terminating Joseph.  The email does not mention or reasonably evince any motive at all:

Status update on Mike's case.

I placed a call to LaShawn Walker in DC to see if they have standard termination letters for SCEPs or procedures we need to follow just to make sure we're doing this following any guidelines they have in place. I spoke to someone in the office and she indicated that there are guidelines and letters but she couldn't get to them today. LaShawn will be in tomorrow, so I'll come in long enough to get with her to see what she has before I spend more time on drafting a letter that may be really simple and needs to follow some guidelines I don't have.

The email was sent approximately three months *after* Joseph made his first discrimination charge and is therefore insufficient to raise an inference of retaliation.  Although an employee can satisfy his burden of demonstrating the presence of a causal connection by showing a close temporal connection

between his protected expression and his termination, the temporal proximity must be very close, and if "there is a substantial delay between the protected expression and the adverse action" and "the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

In *Higdon*, the Eleventh Circuit held that a three-month period between the protected conduct and the alleged retaliatory action did "not allow a reasonable inference of a causal relation between the protected expression and the adverse action." *Id.* at 1221; *see also Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient). Therefore, a causal connection cannot be inferred by the proximity of the two events (Joseph's discrimination charge and the email) and Joseph's claim must fail because he does not present any other evidence of causation.

Moreover, even though this email was sent three months after Joseph filed his discrimination complaint, Joseph's participation in the SCEP was not actually terminated and Joseph was permitted to continue working in the program until August 2010, eighth months later. The uncontroverted record shows that at that point Joseph was neither eligible to continue as a student employee (because he was no longer a student) nor to be converted to a permanent position (because no vacancies were available). Therefore, the plaintiff has failed to create a genuine factual dispute as to (1) whether there was a causal connection between his protected activity and his termination, (2) whether the

proffered reason for his termination was pretextual, and (3) ultimately, whether the agency's failure to convert him to a permanent employee was the result of unlawful retaliation. Consequently, the defendant is entitled to summary judgment on the retaliation claim in Count VII. *Cf. Burgos-Stefanelli v. Secretary, U.S. Dep't. of Homeland Sec.*, 410 F. App'x 243 (11 Cir. 2011) (affirming summary judgment against former federal employee who asserted a retaliation claim).

X.   Failure to Convert Plaintiff to a Permanent Position Because of Race and National Origin (Counts VIII and IX)

Lastly, the plaintiff claims that he was replaced with a less-qualified, non-black Hispanic male. The defendant, however, argues that the plaintiff has presented no evidence that he was the victim of intentional discrimination. The analysis for this claim is largely duplicative of the analysis for the retaliation claim just discussed. Here again, because the plaintiff does not present any evidence to refute the defendant's well-supported explanation that the plaintiff was not converted as a result of the "overhire" status, he cannot demonstrate pretext and this claim must also fail.

Joseph attempts to create a factual issue here by arguing that Castro could not confirm during her deposition that Joseph's failure to meet the eligibility requirements of the SCEP program was the reason for his termination. [4] During her deposition, Castro said she did not remember the basis of Joseph's ineligibility, but, significantly, she also testified that there were no vacancies in

---

[4]   Plaintiff's notice of non-conversion letter explained that there was "no vacancy . . . available within District 9 for [Plaintiff's] conversion . . . ."

the district.   Joseph also points to the deposition of Elaine Broughton, who testified that there was no funding shortage in the SCEP program.   But Broughton did not testify that there were any vacancies in August 2010 for which Joseph would have been eligible for conversion.   Her comments about SCEP funding are thus immaterial because Joseph had at that point completed his university work and he could only remain employed with the defendant if he were converted to a permanent position.

Thus, the uncontroverted record remains that the agency simply could not have converted Joseph to a permanent employee because **no vacancies existed** as a result of the "overhire" status.   The defendant is therefore entitled to summary judgment on this claim as well.

XI.   Conclusion

Defendant's motion for summary judgment is **granted**.   The Court will separately enter final judgment in accordance with Federal Rule of Civil Procedure 58.

**DONE AND ORDERED** in Chambers, at Miami, Florida, March 15, 2012.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record

25